UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL ACTION NO. 15-72-DLB-JGW**

**HALL WATERPROOFING TECHNOLOGY, LLC,**                                              **PLAINTIFF**

**vs.**                                          **MEMORANDUM ORDER**

**VOLATILE FREE, INC.,**                                                                     **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I.      Introduction**

This matter is before the Court on Defendant Volatile Free, Inc.'s Motion for Summary Judgment. (Doc. # 20). Plaintiff Hall Waterproofing Technology having filed its Response (Doc. # 29), and Volatile Free having filed its Reply (Doc. # 30), this matter is ripe for review. Having reviewed the parties' briefing, and the Court being otherwise sufficiently advised, Volatile Free's Motion for Summary Judgment will be **denied** for the reasons stated herein.

**II.     Factual and Procedural Background**

This litigation arises from leaky roofs at the Kentucky Speedway in Sparta, Kentucky. On February 4, 2012, Hall Waterproofing Technology was retained by General Contractor Consulting Services to remove and install new recovery board under some roofs at the Kentucky Speedway. (Doc. # 1-1 at 9). In addition to installing recovery board, Hall was also to reseal the roofs. (*Id*.). Hall contacted Volatile Free to inquire about using their waterproofing product to reseal the Speedway's roofs. Volatile Free provides, among other

things, polyurea roof-coating services. Polyurea roof coating is a type of liquid roofing, whereby a new or existing roof can be repaired at a fraction of the cost of roof replacement. After being sprayed on the roof, Volatile Free's polyurea roof coating dries in seconds and forms a waterproof barrier. Elastomeric roofing systems such as this not only provide waterproofing, but also help reduce heating and cooling costs and protect the underlying structure.

Hall consulted Volatile Free regarding which of their products would be best suited for the Speedway. Hall selected VFI-540R for the job on the advice of Mark Baum, a VFI representative. (Docs. # 29-4 & 29-10). Baum was provided with specifications for the job and ultimately approved both the type and amount of liquid roofing for Hall's project. (Doc. #29-4).

Before beginning work, Hall and VFI entered into a contract known as the "Authorized Roofing Applicator Agreement" ("ARAA"). (Doc. # 29-1). The ARAA governs the rights and obligations of Hall and Volatile to one another, both during and after completion of the project. Importantly, the ARAA requires Hall – the "Applicator" – to permit:

> VFI to inspect and accept (at VFI's option) the watertight integrity of the installation of Roofing Systems. VFI may direct the Applicator to make such changes or repairs, as VFI deems necessary for proper installation. Such changes or repairs shall be at Applicator's expense if VFI determines that Applicator failed to follow and adhere to VFI's instructions ... otherwise such changes shall be at VFI's expense.

(Doc. # 29-1 at 2).

After substantial completion and approval of the work by Volatile Free, Hall remained liable for leaks at the structure for a two-year period. (Doc. # 29-1 at 2). After

2

two years, however, the ARAA states that Hall:

> shall have no further obligation to make repairs at its expense under this Agreement, provided that Applicator has promptly commenced and diligently proceeded to correct and repair all leaks brought to its attention during said minimum two (2) year period and has successfully corrected and repaired such leaks and the conditions causing them, and further provided that Applicator has installed the Roofing Systems in accordance with VFI's specifications, details, installation instructions and procedures.

(Doc. # 29-1 at 2).

Further, the ARAA lays out the contractual indemnity rights of Hall and Volatile Free:

> Applicator agrees to indemnify, pay for the defense of, and save VFI harmless from any and all damages, including harm to the Applicator's employees, losses or expenses including attorney's fees, direct or indirect, including settlement of any claim subject to the Applicator's approval which approval shall not be unreasonably withheld, which VFI may be subjected to because of Applicator's negligence or failure to perform any term or condition of this Agreement....
>
> VFI shall indemnify and save Applicator harmless from any damages, losses or expenses, including reasonable attorney's fees, which Applicator may sustain as determined by a final judgment against Applicator or a settlement of any claim, approved in writing by VFI, resulting from VFI's negligence in performing or failing to perform its obligations under the Standard Warranty; provided, however, that this indemnity shall not be enforceable against VFI (whether VFI may have been negligent in performing or failing to perform its obligations under the Standard Warranty) if the damages, losses, or expenses sustained by Applicator were caused in whole or in part from any act or failure to act by Applicator as required by this Agreement.

(Doc. # 29-1 at 3).

Work began in March 2012. On the first day of work, Volatile Free representative Thomas Buckely was on the job site to demonstrate proper application of the VFI-540R coating. (Doc. # 29-2 at 1). Buckely sprayed a 4,000-5,000 square foot portion of the southwest corner of the south roof at the Speedway. (*Id*.). Hall applied the coating to the remaining 38,000 square feet of the roof.

Subsequent to the execution of the ARAA and commencement of work at the

structure, Hall requested a fifteen-year "Material and Labor Warranty," but Volatile Free mistakenly sent him a fifteen-year "Material Only Warranty" instead. (Doc. # 29-10). The Material Only Warranty read:

> Volatile Free, Inc., warrants to Owner [Kentucky Speedway] ... that the Volatile Free, Inc. Elastomeric Coating System ("The System") applied at [the Speedway] will remain free of water leaks into the Structure resulting from ordinary weather conditions. The Applicator also warrants to Owner that The System applied at the Structure ... will remain free of water leaks into the Structure resulting from ordinary weather conditions. The length of this limited warranty shall be fifteen (15) years from Date of Completion Application. In the event of water leaks into the Structure due to a defect with The System ... Volatile Free, Inc., for its part, will supply The System Material necessary for repairs for such defects. In the event water leaks into the Structure due to improper application by the Applicator, there is no warranty by Volatile Free, Inc. and only the Applicator will supply The System materials and all other necessary material and labor to remedy the water leak without cost to owner.

(Doc. # 29-9). Hall noticed that the warranty did not require Volatile Free to cover the labor necessary to reapply the liquid roofing, which allegedly did not comport with the parties' agreement regarding the warranty. Hall requested, and was sent, the Material and Labor Warranty. (Doc. # 29-10).

The Material and Labor Warranty's first two sentences are identical to those in the Material Only Warranty. The latter half of the Labor and Material Warranty, however, purports to differ from the Material Only Warranty and reads:

> In the event that water leaks into the Structure due to a defect with Volatile Free, Inc. Elastomeric Coasting System ... the manufacturer for its part will supply the coating necessary for the repairs and the Applicator for its part will supply any additional material and install without cost to owner Volatile Free Inc. coatings necessary to repair such defects.

(Doc. # 29-11). As is evident, the Material and Labor Warranty the parties signed required Hall, rather than Volatile Free, to provide the labor to install any new coating. The Material and Labor Warranty is substantively the same as the Material Only Warranty – Volatile

4

Free provides the material and Hall supplies the labor under either. Despite this, the Material and Labor Warranty was forty-percent more expensive than the Material Only Warranty, and Hall paid for this upgrade. (Docs. # 29-7 & 29-8).

Work was completed in May 2012. Per their agreement, a Volatile Free representative came to the site to ensure that the work was completed to company specifications, and found that it was. (Doc. # 29-10). Certification that the work was properly completed allowed Hall to submit the paperwork indicating the same, and effectuated the fifteen-year Material and Labor Warranty. (*Id.*).

Based on the record before the Court, the next couple of years were uneventful. Then sometime in 2015, the roofs at the Speedway began to leak. Understandably, the Speedway wanted the leaky roofs repaired. (Doc. # 1-2 at 21). It is not clear from the record whether this has been done. What is known is that both Hall and Volatile Free believes they should not have to pay for the labor to reapply the liquid roofing. Hall filed suit in Gallatin County, Kentucky Circuit Court seeking a declaration of rights between it and Volatile Free. (Doc. # 1-1). Volatile Free removed the action to this Court, and has now filed a Motion for Summary Judgment. (Doc. # 20). Part of that Motion was previously denied as moot when the Court extended the deadline for expert disclosures. (*See* Doc. # 28). The remaining portions will be addressed, and denied, for the reasons stated below.

### III. Analysis

#### A. *Preliminary Matters*

First, the Court must clarify the relief sought in this matter. The parties have not pled any contractual claims or alleged that any work has actually been done to correct the leaking roofs at the Speedway. Instead, the parties briefing implies that they are seeking

5

a declaration of rights, and the Court construes this action as one brought pursuant to 28 U.S.C. § 2201. Accordingly, the rights to be determined are narrow – namely, which party is required to pay for the labor to reapply the liquid roofing.

Second, the Court needs to explain the limits of this Memorandum Opinion and Order. The Court acknowledges that the ARAA contains a contractual-indemnity clause. However, the parties do not allege that there has been a settlement or judgment against Hall. Therefore, based on the facts before the Court, that clause has not yet been triggered and indemnity is not an issue at this time. Thus, the Court makes no ruling as to that clause's effect. Instead, the parties' briefing reflects a disagreement regarding the scope of the Material and Labor Warranty. While the ARAA's provisions may ultimately affect the rights of the parties, the facts presented during this initial briefing do not allow the Court to delve deeply into that agreement. However, fact discovery has not yet closed, and should the Court need to make determinations regarding the ARAA, it will do so at that time.

Finally, the Court needs to address a potential choice-of-law issue. Parol evidence is a substantive rule of law, not a procedural one, *Childers & Venters, Inc. v. Sowards*, 460 S.W.2d 343, 345 (Ky. 1970); *Town Bank v. City Real Estate Dev., LLC*, 793 N.W.2d 476, 485 (Wis. 2010), so the Court must determine which states' law to apply by engaging in choice-of-law analysis. Kentucky choice-of-law rules apply in this case because a "federal court in a diversity case must apply the conflict of law rules of the state in which it sits." *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 490 (1941)). At first blush, it might appear that Wisconsin law should apply because of the choice-of-law provision in the ARAA. (Doc. #

29-1 at 4). However, Kentucky is very egocentric, and despite *Erie* guesses by federal courts to the contrary, the Commonwealth does not consider a contract's choice-of-law provision determinative; instead, it is but one factor that a court must consider in its choice-of-law analysis.[1]

However, courts "only need[ ] to go through the choice of law analysis when a conflict occurs between two states' laws." *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010). After a review of Kentucky and Wisconsin law, the Court finds no conflict between the two that would necessitate choice-of-law analysis at this juncture. As will be seen below, adjudication of this motion turns on principles of parol evidence and agreement integration, and both Kentucky's and Wisconsin's laws track the Restatement (Second) of Contracts in those areas of contract law.

**B.   *Standard of Review***

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the

---

1) The Kentucky Supreme Court has applied this test even where the contract at issue contains a choice of law clause. *Papa Johns Int'l, Inc. v. Pizza Magia Int'l, LLC*, Civ. A. No. 3:00-CV-548-H, 2001 WL 1789379, at *2 (W.D. Ky. May 10, 2001) (citing *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 717-18 (Ky. 1982)). The Sixth Circuit has cautioned the Kentucky Supreme Court against "precluding parties from making a reasonable and binding choice as to the law that will govern their contractual relationship." *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000). In *Wallace Hardware*, the Sixth Circuit "ultimately predicted that Kentucky would apply § 187 of the Restatement (Second) of Conflict of Laws [Law of the State Chosen by the Parties] rather than § 188 [Most Significant Relationship Test] when faced with a contractual choice of law provision" and reversed the district court's decision applying § 188. *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 709 (W.D. Ky. 2013) (discussing the implications of *Wallace Hardware*). However, "[r]ecent decisions by Kentucky's highest court have shown this prediction to be mistaken, and, instead, have affirmed the application of § 188's most-significant-relationship test, even where the parties have expressly agreed to have their contractual rights and duties governed by a particular state's laws." *Id.* (citing *Schrand*, 300 S.W.3d at 181; *Schnuerle v. Insight Commc'n Co.*, 376 S.W.3d 561, 566-67 (Ky. 2012)). For these reasons, the Court will ultimately have to apply § 188's most significant relationship test, regardless of the Agreement's choice-of-law provision.

evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).

Once the movant has satisfied its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; rather, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

    **C.** ***Volatile Free's Motion for Summary Judgment is denied because the parol evidence rule does not bar introduction of evidence of prior negotiations in this case.***

Volatile Free claims that the Material and Labor Warranty is unambiguous and requires it to provide materials, while Hall covers labor and any other expenses incurred in repairing leaks at the Speedway. Hall counters that it was told during prior negotiations that the Material and Labor Warranty required Volatile Free to cover materials *and* labor. (Doc. # 29-10). Adjudication of this argument requires the Court to determine whether Hall's evidence of prior negotiations is barred by the parol-evidence rule.

The parol-evidence rule is designed to "preserve the integrity and reliability of written contracts, to reduce the opportunity for perjury and to prevent unsophisticated jurors from being misled by false or conflicting testimony." *FDIC v. First Mortg. Investors*, 250 N.W.2d 362, 365 (Wis. 1977). Thus, where an agreement was been reduced to a writing, it is

presumed that the writing supercedes prior negotiations and oral agreements. *Id*. But the rule is also "a maze of conflicting tests, subrules and exceptions." *Id*.

The first step in parol-evidence analysis is to determine if the agreement is integrated, and if so, whether it is completely or partially integrated. *Id*. at 366. When parties reduce their agreement to a writing, there is a presumption that the writing represents the entire, final agreement, into which all prior negotiations and preliminary agreements are merged. *Russell v. Halteman's Adm'x*, 153 S.W.2d 899, 904 (Ky. 1941). This presumption is rebuttable, Restatement (Second) of Contracts §§ 209-210 & 214, but if the Court finds that the document is integrated, parol evidence of prior and contemporaneous oral agreements is not admissible to vary the terms of the writing. *Sowards*, 460 S.W.2d at 345; *Town Bank,* 793 N.W.2d at 485; Restatement (Second) of Contracts §§ 213 & 216. If a writing is completely integrated, even consistent additional terms are barred by the parol evidence rule. *Town Bank*, 793 N.W.2d at 484-86, In contrast, where the agreement is only partially integrated, parol evidence of consistent terms may be presented. *Id*. at n. 3; Restatement (Second) of Contracts § 213. However, both completely and partially integrated agreements forbid the introduction of inconsistent terms. *Bullock v. Young*, 67 S.W.2d 941, 946 (Ky. 1933); *Town Bank*, 793 N.W.2d at 485; Restatement (Second) of Contracts § 215. Thus, Hall's parol evidence of prior negotiations should be barred, regardless of the Material and Labor Warranty's level of integration, because his assertion that Volatile Free agreed to cover materials *and* labor is in direct conflict with that agreement's plain language.

Yet, there are exceptions to the seemingly ironclad parol-evidence rule. Restatement (Second) of Contracts § 214 provides:

> Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish: ... (d) illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause; (e) ground for granting or denying rescission, reformation, specific performance, or other remedy.

In this case, the Court finds that Hall's evidence of prior negotiations, during which it claims Volatile Free promised that the Material and Labor Warranty required Volatile Free's cover materials and labor, is not barred by the parol-evidence rule because it is evidence of a potential fraud or mutual mistake of fact. The affidavit of Richard Hall claims that he was initially sent a Material Only Warranty. He contacted Volatile Free because he claims this was not the warranty the parties had negotiated. Instead, he says that they had agreed to the Material and Labor Warranty that put the cost of both on Volatile Free. Hall claims that Volatile Free acknowledged the error and promptly sent him a new Material and Labor Warranty. Additionally, Hall paid a premium for this "upgraded" warranty; the Material and Labor Warranty cost forty-percent more than the Material Only Warranty. Since the plain language of both Warranties indicates that Volatile Free will pay for only materials and that Hall will be responsible for labor, it is hard to figure why Hall would pay a premium to Volatile Free for a promise that it could have made for free to the Speedway. Furthermore, Hall claims that warranties in which the manufacturer pays for both materials and labor are common in the industry. Accordingly, Hall's evidence is not barred by the parol-evidence rule because it relates to a possible fraud or mutual mistake of fact.

These facts – Hall's affidavit regarding the warranty negotiations, the premium paid for the warranty upgrade, and the evidence of practice in the trade, working in unison and construed in favor of the non-movant – suggest that Volatile Free could have misled Hall or that the parties may made a mistake when they signed the Material and Labor Warranty.

This genuine dispute of material fact requires that the Court deny Volatile Free's Motion for Summary Judgment.

IV. **Conclusion**

**IT IS ORDERED** that Defendant Volatile Free's Motion for Summary Judgment (Doc. # 20) be, and hereby is, **denied**.

This 27th day of June, 2016.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Cov15\15-72 Order Denying D's MSJ.wpd